UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BRADLEY,

        Plaintiff,

Case No. 1:08-cv-63

Hon. Gordon J. Quist

v.

CAROL GRAVELLE and
ROBIN MILLER,

        Defendants.

                                  /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983.[1] This matter is now before the court on defendants' motion for summary judgment (docket no. 17). Defendants' motion is unopposed.

**I.    Background**

Plaintiff's complaint sets forth the following allegations. In June 2007, while incarcerated at the Richard A. Handlon Correctional Facility (MTU), plaintiff was diagnosed with angina. P.A. Filsinger prescribed Nitrostat (i.e., nitroglycerin) for treatment. Plaintiff requested Nitrostat approximately five times between June 12, 2007 and July 26, 2007. On or about June 30, 2007, plaintiff was issued a bottle of Nitrostat. At that time, defendant Carrol Gravelle,[2] a pharmacy technician at the correctional facility, expressed concern "in a hostile manner," that plaintiff was

---

[1] The court notes that defendant is no longer incarcerated. The Michigan Department of Corrections Offender Tracking Information Service reports that plaintiff was paroled on February 26, 2008. *See* http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=127143.

[2] Defendant Gravelle is identified as "Carol Gravelle" in the complaint.

abusing the medicine. Plaintiff requested another bottle of Nitrostat on or about July 13, 2007. At this time, defendant Gravelle "expressed her concern more aggressively," and demanded an explanation. Plaintiff replied that he used the Nitrostat as needed.

Plaintiff requested an emergency supply of Nitrostat on July 26, 2007. Nurse Harding advised plaintiff that defendant Gravelle would not issue any Nitrostat because: plaintiff had abused the medication in the past; had received an order for the drug six days earlier; and P.A. Filsinger had stopped the prescription. Plaintiff then had a resident officer, RUO Todd, call the Health Care on his behalf to obtain Nitrostat. Defendant Robin Miller, a registered nurse, advised RUO Todd that Health Care was not going to give plaintiff any Nitrostat. Later that afternoon, plaintiff suffered minor chest pains. When a different corrections officer, Lt. Cook, contacted defendant Miller, she reported that a stop order had been placed on plaintiff's file regarding the Nitrostat. Plaintiff suffered severe chest pains later in the afternoon and obtained Nitrostat from another prisoner. Plaintiff was carried to health services, where Nurse Harding examined him. The nurse denied that P.A. Filsinger had stopped the Nitrostat prescription. Plaintiff was sent to the Ionia General Hospital Emergency room. When plaintiff returned to the correctional facility the next day, he was examined by P.A. Filsinger, who denied that he stopped the Nitrostat prescription.

Plaintiff alleges that at MTU:

> Nitrostat, unlike other prescribed medicines which are automatically issued monthly from [an] electronic record, is dispensed strictly on [an] as needed basis. Prior to July 27, 2007 there was no electronic record of prescribed Nitrostat for plaintiff. The only method available for plaintiff to obtain Nitrostat was via a health care request form. The electronic medical record for prescribed Nitrostat wasn't created until July 27, 2007.

Compl. at ¶ 10. On August 18th, plaintiff was admitted to the hospital for severe chest pain. *Id.* at ¶ 12. He underwent coronary bypass surgery on August 22nd.

Plaintiff seeks a court order declaring that the defendants' practices in failing to provide him with Nitrostat were unconstitutional, compensatory damages of $1,200,000.00, punitive damages of $200,000 from each defendant, and other unspecified relief.

## II.     Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

A grant of summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

3

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1776 (2007).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### III.   Eighth Amendment claim

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A prisoner's denial of prescribed medication may form the basis for an Eighth Amendment violation. *See Johnson v. Hardin County, KY*, 908 F.2d 1280, 1284 (6th Cir. 1990). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

4

The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Hudson*, 503 U.S. at 8-9.  With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Id.* at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.*  at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### A.    Defendant Gravelle

In her affidavit, defendant Gravelle states that at all times relevant to this action, she was employed as a Pharmacy Assistant employed by MDOC at MTU in Ionia, Michigan.  Gravelle Aff. at ¶ 1, attached to defendants' brief as Exh. A.  She spoke with plaintiff only once regarding the Nitrostat.  *Id.* at ¶ 3.  At that time, Gravelle expressed concern to plaintiff regarding his use of the medication due to possible side effects.  *Id.*  Contrary to plaintiff's complaint, no records indicate

5

that he was issued Nitrostat on June 30, 2007. *Id.* at ¶ 4. P.A. Filsinger did not write an order for Nitrostat until July 27, 2007. *Id.* Defendant Gravelle denies interfering with plaintiff's Nitrostat prescription, explaining as follows:

> 6. I did not interfere with prisoner Bradley's receipt of Nitrostat. I can only dispense medication that have [sic] current orders and come from the Pharmacort Pharmacy. Any medications dispensed from the PBD (Physician Dispense Box) or EB (Emergency Box) must have a current order and be issued by a nurse.
>
> 7. Our facility does not have any medications which are auto-filled. Refills are submitted to the Pharmacy upon kited request. If no refills or current order exist the chart is pulled and given to the medical provider for review and medication renewal.
>
> 8. Nitrostat is available from our PDB (Physician Dispense Box) or EB (Emergency Box). It can only be dispensed by nursing staff when a current order exists. It is not available upon request in prison without a prescription. It is not an over the counter medication.

*Id.* at ¶¶ 6-8.

Defendant Gravelle's affidavit establishes that plaintiff was not entitled to receive Nitrostat until P.A. Filsinger wrote an order for the medication on July 27, 2007. Plaintiff did not submit any evidence to contest defendant Gravelle's affidavit. On the contrary, two exhibits attached to plaintiff's complaint are consistent with the affidavit. First, a "current medication list" indicates that as of 6:02 p.m. on July 26, 2007, plaintiff had seven prescriptions, but Nitrostat was not among them. *See* Exh. D attached to Compl. Second, an "orders summary" from P.A. Filsinger indicates that as of 8:07 a.m. on July 27, 2007, Filsinger wrote orders for the following medications: Imdur, aspirin and Nitrostat. *See* Exh. D(a) attached to Compl.

Plaintiff has failed to present any probative evidence to support his claim that defendant Gravelle was deliberately indifferent to his serious medical need by denying him a

prescription medication. Accordingly, defendant Gravelle's motion for summary judgment should be granted.

### B. Defendant Miller

Plaintiff's only claim against defendant Miller arises from her response to plaintiff's July 26, 2007 request for Nitrostat. In her affidavit, defendant Miller states that at all times relevant to this action, she was a Registered Nurse employed by MDOC at MTU in Ionia, Michigan. Miller Aff. at ¶ 1, attached to defendants' brief as Exh. B. Defendant Miller described the events of that day as follows:

> 3. On July 26, 2007, a call was received from the unit officer after prisoner Bradley went to him requesting a refill of his Nitrostat. The officer was informed that prisoner Bradley was just in the clinic and was instructed he did not have a current order for this medication and that his medical record was given to the Medical Service Provider for review.
>
> 4. Another call was received later in the day on July 26, 2007 from Lt. Cook regarding prisoner Bradley. Lt. Cook was informed that health care was aware of prisoner Bradley's request as he was just seen in the clinic. Once again, I verbalized that prisoner Bradley did not have a current order for Nitrostat. We were waiting for the Medical Provider to reorder if necessary.
>
> 5. At no time did prisoner Bradley express to me that he was having any pain or problems or that he was completely out of his medication, and there were no voiced concerns about Bradley's condition at the time of the telephone contacts. Bradley only requested a refill on Nitrostat.
>
> 6. Medication of any kind can not [sic] be given to a person (patient) without a current/active physician's order. Medications are not automatically issued monthly.
>
> 7. Nitrostat is kept in the clinic for emergencies upon a physician's order. Neither Nitrostat or any other medication is given out routinely upon request of the patients. The Medical Provider must write an order and the order needs to be current/active.

Miller Aff. at ¶¶ 3-7 attached to defendants' brief as Exh. B.

7

Defendant Miller's affidavit establishes that she responded to two telephone calls from corrections officers and advised them that plaintiff did not have a current prescription for Nitrostat. Nothing suggests that defendant Miller received an emergency request for medication at this time. On the contrary, plaintiff was simply requesting a medication refill. As previously discussed, plaintiff did not have a Nitrostat prescription at this time, but received a prescription from P.A. Filsinger the next day.

Plaintiff has failed to present any probative evidence to support his claim that defendant Miller was deliberately indifferent to his serious medical need by denying him a prescription medication. Accordingly, defendant Miller's motion for summary judgment should be granted.

### IV. Recommendation

Accordingly, I respectfully recommend that defendants' motion for summary judgment (docket no. 17) be **GRANTED**.

Dated:  December 29, 2008              /s/ Hugh W. Brenneman, Jr.
                                       HUGH W. BRENNEMAN, JR.
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).